**CITY OF ST. LOUIS,**
**Plaintiff/Respondent,**

v.

**VARAHI, INC., Defendant/Appellant.**

No. ED 77802.

Missouri Court of Appeals,
Eastern District,
Division Five.

Feb. 28, 2001.

Ronald D. Kwentus, Jr., Asst. City Counselor, St. Louis, MO, for respondent.

Leonard J. Frankel, Frankel, Rubin, Bond & Dubin, P.C., St. Louis, MO, for appellant.

KATHIANNE KNAUP CRANE, Judge.

Defendant hotel owner appeals from a judgment finding the hotel to be a public nuisance and ordering it to post its daily rate, rent rooms for 24 hours or more at no less than its posted rate, require all guests to complete a registration form to which they apply their thumbprints, and have its registration office accessible only from the interior of the building. We reverse for the reason that the City did not adduce evidence that would support a reasonable inference that defendant's acts were the proximate cause of the alleged nuisance.

Defendant Varahi, Inc., is a Missouri corporation that owns the Mansion Motel (the hotel), a ten-room hotel located at 4915 Bulwer Avenue in the City of St. Louis (the City). City police began an investigation of prostitution in and around the hotel in December, 1995.

On November 30, 1998, the City filed a petition in equity to enjoin defendant from continuing, maintaining, or supporting any activities that constitute a public nuisance and to obtain other relief, including the closing and sale of the hotel. In its petition it alleged that "between the years 1995 through 1998 there has been more than 32 arrests for [sic] made as a direct result of activities proposed or occurring at the said property for various violations of State and municipal criminal statutes and ordinances, including assault, peace disturbance, possession of controlled substances, and prostitution." It further alleged that this criminal activity threatened the health, welfare and safety of the public and that defendant knew or should have known of the activities alleged, which constituted a public nuisance.

At trial the City called four police officers and defendant's owner. Police records from January 1, 1994, through April 22, 1999, showed that, during this period, there were three arrests inside the hotel. During this same period there were 29 other arrests in the 4900 block of Bulwer. At least 17 of them were for prostitution in which police officers picked up women in the Bulwer street area and took them to a location, other than to the hotel, where they agreed to a sexual act and were arrested. None of these arrests involved the use of or even mention of the hotel.

Of the three arrests inside the hotel, the first occurred on December 26, 1995. A woman flagged down a police officer on either Bulwer Avenue or a side street. She suggested going down to the river to have sex in the car. When the officer disagreed with this suggestion, she suggested going to the hotel. They did and she was arrested after they entered a

room at the hotel. On January 2, 1996 the Metropolitan Police Department notified defendant's owner that the hotel was being used as a house of prostitution, and if the illegal activity continued, warrants may be sought charging him with allowing the premises to be used for prostitution in violation of a city ordinance. The second arrest inside the hotel occurred on October 15, 1997. A woman motioned to a police officer at Broadway and Talcott, a block and a half from defendant's hotel. They discussed sexual activity for money, she asked him if he had a place to go, and, when he said he did not want to use the car, she suggested going to the hotel. After they entered a hotel room, the woman was arrested for prostitution. On October 31, 1997, city police sent a letter to defendant almost identical to the January 2, 1996 letter. A third arrest occurred inside the hotel on April 3, 1998. The only evidence about this arrest is that a city detective testified that he came in to "take down" the subject after another detective "made the case."

The officers testified that the hotel had a reputation as a place that promoted prostitution, the area was a high prostitution area, and the 4900 block of Bulwer had a reputation for prostitution, street drugs, rapes and robberies. On cross-examination the police officers testified that the hotel is located in a primarily industrial area and is the only building standing on its side of the street in its block. Defendant's owner testified to the hotel's registration procedure, its outside registration window, and its policy of renting rooms in three-hour segments at a rate of $12 for three hours.

After the trial, the court entered judgment in the City's favor. In its Amended Memorandum Order and Judgment, it found that defendant had knowingly allowed its property to become a haven for prostitutes and knowingly operated its hotel in a manner conducive to prostitution activity. The court found that the circumstantial evidence of defendant's method of

operation, combined with prostitutes found in and near the hotel on a regular basis convinced it that defendant was operating a house of prostitution, constituting a nuisance as a matter of law. However, because the court found that the hotel was not operated solely for the purpose of prostitution, it tailored its remedy to enjoin defendant from operating the hotel except on the following conditions:

(1) The actual daily rate for the renting of rooms shall be posted prominently within five (5) feet of the registration desk;

(2) no room shall be rented for a period of time less than twenty-four (24) hours or for less than the posted minimum rental;

(3) no person shall be admitted to any room on the premises unless such person shall complete a registration form stating the person's name and permanent residence address and applying a legible impression of his or her thumbprint; and

(4) no motel registration office or window shall be maintained so as to be accessible without physically entering the motel building.

Defendant appeals. We will affirm the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of evidence, or it erroneously applies or declares the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

For its first point, which we find dispositive, defendant contends that the trial court erred in entering an injunction against it because no substantial evidence supported the judgment. Defendant argues that no connection was shown between its hotel and the alleged public nuisance. Defendant asserts that, because only three prostitution arrests were made inside the hotel in a five-year period, the evidence did not support a conclusion that a wrongful act of the hotel caused the prostitution nuisance in the neighborhood.

The City responds that the required causal connection was met because the trial court found that defendant had knowledge of the nuisance as a result of the manner in which it operated its hotel and that a causal connection can be established if a defendant had reasonable anticipation of the harm and failed to exercise reasonable care to avert the harm, citing *Kelly v. Boys Club of St. Louis*, 588 S.W.2d 254, 257 (Mo.App.1979).

Before addressing the issues raised by this point, it is important to understand the legal and factual parameters of the nuisance the City sought to enjoin. In the first place, this lawsuit was brought to abate a "public nuisance."

"A public or common nuisance is an offense against the public order and economy of the state, by unlawfully doing any act or by omitting to perform any duty which the common good, public decency, or morals, or the public right to life, health, and the use of property requires, and which at the same time annoys, injures, endangers, renders insecure, interferes with, or obstructs the rights or property of the whole community, or neighborhood, or of any considerable number of persons, even though the extent of the annoyance, injury, or damage may be unequal, or may vary in its effect upon individuals. Another factor in defining a nuisance is that consideration should be given to places where the public have the legal right to go or congregate, or where they are likely to come within the sphere of its influence. A nuisance is not public though it may injure a great many persons, the injury being to the individual property of each. A nuisance is public when it affects the rights enjoyed by citizens as part of the public, as the right of navigating a river, or traveling a public highway; rights to which every citizen is entitled."

*State by Major ex rel. Hopkins v. Excelsior Powder Mfg. Co.*, 259 Mo. 254, 169 S.W. 267, 273 (1914); *State ex rel. Attorney General v. Canty*, 207 Mo. 439, 105

S.W. 1078, 1080–81 (1907) (both quoting J. Joyce, Treatise on the Law Governing Nuisances, Section 5, at 10 (1906)).

■ "A 'public nuisance is an unreasonable interference with a right common to the general public.' " *State ex rel. Dresser Industries, Inc. v. Ruddy,* 592 S.W.2d 789, 792 (Mo. banc 1980), quoting Restatement (Second) of Torts Section 821B(1) at 87 (1977). That section of the Restatement identifies five general categories of "public rights," the unreasonable interference with which may constitute a public nuisance: "the public health, the public safety, the public peace, the public comfort or the public convenience." Restatement (Second) of Torts, Section 821B(2)(a). An invasion of a public right "constitutes a species of petty offense abatable, in the usual course, by a public officer." *State v. Kansas City Firefighters Local No. 42,* 672 S.W.2d 99, 114 (Mo.App. 1984). A public nuisance can also be a private tort when a person shows a particular damage of a kind not shared with the rest of the public. *Id.*; *44 Plaza, Inc. v. Gray–Pac Land Co.,* 845 S.W.2d 576, 580 (Mo.App.1992).

■ In contrast, a private nuisance is restricted to the invasion of interests in the use or enjoyment of land. It is only a tort—and not an offense as in the case of public nuisance—and the remedy rests exclusively with the person whose rights have been disturbed. *Fuchs v. Curran Carbonizing & Engineering Co., Inc.,* 279 S.W.2d 211 (Mo.App.1955); Restatement (Second) of Torts § 821B, comment h, § 821D (1977); Prosser, *Private Action for Public Nuisance,* 52 Va.L.Rev. 997, 999 (1966).

*Kansas City Firefighters,* 672 S.W.2d at 114 n. 8. Unlike a private nuisance, a public nuisance does not necessarily involve interference with the use and enjoyment of land. Restatement (Second) of Torts, Section 821B, comment h, p. 93.

■ Although public nuisances and private nuisances are distinguishable, they also overlap and are interrelated. *Ruddy,* 592 S.W.2d at 792. Where they are alike, cases involving either type of nuisance may serve as precedent for the other.

Secondly, the lawsuit was not filed pursuant to Section 567.080 RSMo (1994), which declares a building used for prostitution to be a public nuisance and provides for injunctive relief. That statute provides:

1. Any room, building or other structure regularly used for sexual contact for pay as defined in section 567.010 or any unlawful prostitution activity prohibited by this chapter is a public nuisance. 2. The attorney general, circuit attorney or prosecuting attorney may, in addition to all criminal sanctions, prosecute a suit in equity to enjoin the nuisance. If the court finds that the owner of the room, building or structure knew or had reason to believe that the premises were being used regularly for sexual contact for pay or unlawful prostitution activity, the court may order that the premises shall not be occupied or used for such period as the court may determine, not to exceed one year. 3. All persons, including owners, lessees, officers, agents, inmates or employees, aiding or facilitating such a nuisance may be made defendants in any suit to enjoin the nuisance, and they may be enjoined from engaging in any sexual contact for pay or unlawful prostitution activity anywhere within the jurisdiction of the court. 4. Appeals shall be allowed from the judgment of the court as in other civil actions.

*State v. Irving,* 700 S.W.2d 529 (Mo.App. 1985) involved a case filed pursuant to that statute.

Instead, the petition alleged a variety of criminal activity culminating in 32 arrests which directly resulted from activities at the hotel. It alleged that the criminal activity was the public nuisance which placed the public in constant danger. In oral argument the City characterized the criminal activity which constituted the nui-

sance as the prostitution solicitation on the street.

The issue raised by the first point is whether the City established a causal link between defendant's methods of operating the hotel and the prostitution solicitation on the street. Both parties agree that some causal connection must exist between the defendant and the alleged nuisance. *Grommet v. St. Louis County,* 680 S.W.2d 246, 252 (Mo.App.1984).

The City's reliance on *Kelly,* 588 S.W.2d at 257, for its contention that it established proximate cause because it showed defendant's knowledge and failure to act is misplaced. *Kelly* involved a nuisance on the defendant's premises. Likewise, in *Grommet,* 680 S.W.2d at 253 we applied *Kelly* to analyze whether the evidence established the landowner's liability for the particular nuisance alleged to be conducted by third persons on the landowner's premises. More fully stated, this rule is that in a public or private nuisance:

> A possessor of land upon which a third person carries on an activity that causes a nuisance is subject to liability for the nuisance if it is otherwise actionable, and
>
> (a) the possessor knows or has reason to know that the activity is being carried on and that it is causing or will involve an unreasonable risk of causing the nuisance, and
>
> (b) he consents to the activity or fails to exercise reasonable care to prevent the nuisance.

RESTATEMENT (SECOND) OF TORTS, Section 838 (1979).

 However, this rule does not decide whether defendant's acts are the proximate cause of a nuisance not carried on on defendant's premises, that is the prostitution solicitation on the street. Even if defendant knew of the nuisance on the street, the evidence must show that defendant's acts were "the proximate and efficient cause of the creation of a public nuisance." *State ex rel. Chicago, B. & Q. R. Co. v. Woolfolk,* 269 Mo. 389, 190 S.W. 877, 879 (banc 1916). It is essential to liability in either a public or private nuisance case that the defendant's acts have set in motion a force or chain of events resulting in the invasion. RESTATEMENT (SECOND) OF TORTS, Section 824, cmt. b. "No court of equity can enjoin any transaction, however violative of the criminal law on the part of the defendant, which does not bear such a causal relation to the public nuisance averred in the petition." *Woolfolk,* 190 S.W. at 879.

In *Woolfolk,* our supreme court held that a petition did not state a claim for public nuisance against a railroad by alleging that the railroad delivered, in violation of criminal statutes, intoxicating liquor to persons in a local option county [1] knowing that those persons illegally resold the liquor to persons who became intoxicated and, as a result, disturbed the peace and endangered persons and property. 190 S.W. at 877–79. The court held that none of the acts alleged to have been done by the railroad "necessarily produced such a degree of popular intoxication as to create the public nuisance alleged in the petition to have followed the deliveries." *Id.* at 879. The court concluded that the allegations "amount to nothing more than an allegation of the sequence of such a condition, not its necessary result." *Id.* The petition failed to state a claim because it did not allege "any act which necessarily created a state of general drunkenness and disorder at the places referred to in the petition." *Id.*

The supreme court reiterated this holding in a public nuisance action against a brewery and held that its sale of beer to purchasers in a local option county was not the proximate cause of a nuisance, even if the purchasers, "in conjunction with others, should thereafter create a public nui-

---

1. The 1909 Missouri statutes allowed counties to adopt a local option law. With some exceptions, in those counties it was illegal to keep, store, or deliver intoxicating liquor or to sell, barter, or give it away. *State v. Dick & Bros. Quincy Brewing Co.,* 270 Mo. 100, 192 S.W. 1022, 1024 (1917).

sance by drinking and raising a disturbance." *State ex rel. Weatherby v. Dick & Bros. Quincy Brewing Co.,* 270 Mo. 100, 192 S.W. 1022, 1024–25 (1917). In *State ex rel. Gibson v. Chicago B. & Q. R. Co.,* 191 S.W. 1051 (Mo.App.1917) the court of appeals held that, where the only evidence was that the railroad delivered shipments of beer to a town in a local option county and there were fourteen to sixteen cases of drunkenness in the town's police court, there was a "total absence of any evidence tending to show the existence of a public nuisance in said county, or that defendant was the proximate cause of or responsible for the conditions said to have existed." *Id.* at 1053.

In *Grommet,* we found a school district did not proximately cause any nuisance created on plaintiffs' properties by persons using a street to come and go from the district's school because there was no showing that the parents, delivery persons, and service persons coming and going from the school were the district's agents or that the teachers and employees were operating within the scope of their employment while they were commuting to and from the school. 680 S.W.2d at 252. We also found the district could not be liable for any alleged nuisance caused by St. Louis County's spreading salt on this street because there was no evidence that the district caused the salt to be spread in a particular manner or that it had the authority to control the street clearing. *Id.* at 252–53.

■ The uncontroverted evidence at trial was that of the 32 arrests alleged to evidence the nuisance, only three had any connection to the hotel. There was no evidence that the prostitutes on the street were agents or employees of the hotel or that defendant controlled them in any way. The evidence of three arrests inside the hotel over a five-year period, the hotel's three-hour rental policy, and the reputation of the hotel as a place frequented by prostitutes does not support a reasonable inference that the hotel's three-hour rental policy set in motion a chain of events that caused prostitutes to solicit on the streets of the neighborhood.

■ In addition, the trial court's finding of a nuisance per se because defendant maintained a house of prostitution does not support the judgment. In the first place, this was not the nuisance alleged. The City did not proceed under the statute pursuant to which the hotel could have been declared a public nuisance as a house of prostitution. It is well-established that judgments must be responsive to the issues raised by the pleadings; a judgment which is based on issues not made by the pleadings is void. *Rouse Co. of Mo. v. Justin's Inc.,* 883 S.W.2d 525, 528–29 (Mo.App.1994); *Commission Row Club v. Lambert,* 161 S.W.2d 732, 736 (Mo. App.1942). Secondly, criminal conduct will not sustain liability for a public nuisance unless it caused the nuisance. *Woolfolk,* 190 S.W. at 879. In this case there was no substantial evidence to support a finding of causation.

The judgment of the trial court is reversed.

MARY K. HOFF, C.J., and ROBERT E. CRIST, Sr. J., concur.