CITY OF MILWAUKEE, a municipal corporation,
Plaintiff-Appellant,

v.

NL INDUSTRIES, INC., a foreign corporation, and
Mautz Paint, a Wisconsin corporation,
Defendants-Respondents.†

Court of Appeals

*No. 03–2786. Oral argument September 27, 2004.—Decided
November 9, 2004.*

2005 WI App 7

(Also reported in 691 N.W.2d 888.)

† Petition to review filed.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Ted M. Warshafsky* of *Warshafsky Rotter Tarnoff Reinhardt & Bloch, S.C.* of Milwaukee and *Richard S. Lewis* and *James J. Pizzi-*

*russo* of *Cohen Milstein Hausfeld & Toll, PLLC* of Washington, D.C. There was oral argument by *Richard S. Lewis*.

On behalf of the defendants-respondents, the cause was submitted on the joint brief of *James T. Murray, Jr.* and *Michael J. Wirth* of *Peterson, Johnson & Murray, S.C.* of Milwaukee, *Timothy S. Hardy* of Denver, Colorado, *Elizabeth L. Thompson* and *Jennifer Heisinger* of *Bartlit Beck Herman Palenchar & Scott LLP* of Chicago, Illinois for *NL Industries, Inc.* and *Frank J. Daily* and *Jeffrey K. Spoerk* of *Quarles & Brady LLP* of Milwaukee and *Charles H. Moellenberg, Jr.* and *Jennifer B. Flannery* of *Jones Day* of Pittsburgh, Pennsylvania for Mautz Paint. There was oral argument by *James T. Murray, Jr.* and *Frank J. Daily*.

Before Fine, Curley and Kessler, JJ.

¶ 1. KESSLER, J. The City of Milwaukee appeals from a judgment and an order dismissing its complaint against NL Industries, Inc., and Mautz Paint (collectively, "defendants"). The trial court dismissed the City's claim for public nuisance, concluding that the City could not show that these particular defendants caused their lead-based paint to be applied to any of the specific buildings included in the alleged public nuisance. The court also dismissed the claims of restitution and conspiracy, concluding that these claims are tied to the public nuisance claim.[2] We conclude that genuine issues of material fact preclude summary judgment in defendants' favor. Therefore, we reverse the judgment and the order and remand for trial.

---

[2] Three additional claims against defendant Mautz were dismissed earlier and are not at issue in this appeal.

## BACKGROUND

¶ 2. According to the City's complaint, childhood lead paint poisoning is a severe public health problem in Milwaukee. The City alleged that one in five Milwaukee children tested in 1998 showed blood lead levels at or above the Centers for Disease Control threshold for lead poisoning. According to the City, "[t]his extraordinary incidence of childhood lead paint poisoning is linked to Milwaukee's old housing stock." Specifically, the City alleged that childhood lead paint poisoning is caused when children ingest lead-based paint dust and chips.

¶ 3. The alleged main source of this dust and chips is lead-based paint on old wood windows in homes in which children live. The complaint states: "Windows are exposed to weather that causes the paint on them to peel, crack, or chalk, and are subject to friction when they are opened and closed, all of which generates lead dust." In response to the problem of childhood lead poisoning, the City has undertaken a window abatement program in two target areas of the city. The complaint estimated that the potential cost of this abatement program could exceed one hundred million dollars.

¶ 4. The City asserts that defendants are responsible for these damages because their conduct in marketing and selling substantial quantities of lead pigments and/or lead-based paint in the City of Milwaukee during and after the construction of these dwellings, when they knew the hazards of lead poisoning related to their product, was a substantial factor creating the public nuisance at issue in this case.

¶ 5. The City asks that defendants pay the costs associated with the City's abatement program. Specifi-

cally, the suit seeks: (1) compensatory and equitable relief for abatement of the toxic lead hazards in Milwaukee homes, especially in the target areas; (2) restitution for amounts expended by the City to abate the toxic lead hazards in Milwaukee homes, especially in the target areas; and (3) punitive damages. The theories of liability are: public nuisance, conspiracy and restitution.

¶ 6. After the parties completed significant discovery, defendants moved for summary judgment. The trial court granted the motion. It dismissed the public nuisance claim because it concluded that the City could not prove causation, *i.e.,* that these particular defendants were a cause of the alleged damage. The trial court dismissed the conspiracy claim because it concluded there was no underlying tort upon which a conspiracy could be based. Finally, the trial court dismissed the restitution claim because it held that the inability to prove that defendants were a cause of the nuisance meant they could not be responsible for paying for the abatement. This appeal followed.

## · **DISCUSSION**

¶ 7. This appeal involves issues decided pursuant to summary judgment. We review the grant of summary judgment *de novo,* applying the same standard as the circuit court. *Firstar Trust Co. v. First Nat'l Bank of Kenosha*, 197 Wis. 2d 484, 492, 541 N.W.2d 467 (1995). "[S]ummary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *M & I First Nat'l Bank v. Episcopal Homes Mgmt., Inc.*, 195 Wis. 2d 485, 497, 536 N.W.2d 175 (Ct. App. 1995); *see also* WIS.

Stat. § 802.08(2) (2001–02).[3] We will reverse a decision granting summary judgment if the trial court incorrectly decided legal issues or if material facts are in dispute. *Coopman v. State Farm Fire & Cas. Co.*, 179 Wis. 2d 548, 555, 508 N.W.2d 610 (Ct. App. 1993).

## A. Public Nuisance Claim

¶ 8. The City asserts that childhood lead poisoning is a community-wide public nuisance in Milwaukee. "A public nuisance is a condition or activity which substantially or unduly interferes with the use of a public place or with the activities of an entire community." *Physicians Plus Ins. Corp. v. Midwest Mut. Ins. Co.*, 2002 WI 80, ¶ 21, 254 Wis. 2d 77, 646 N.W.2d 777 (citations omitted).

> The number of people affected does not strictly define a public nuisance . . . . Rather, the court considers many factors, including, among others, the nature of the activity, the reasonableness of the use of the property, location of the activity, and the degree or character of the injury inflicted or right impinged upon.

*Id.* (citing *State v. Quality Egg Farm, Inc.*, 104 Wis. 2d 506, 520, 311 N.W.2d 650 (1981)) (footnote omitted).

¶ 9. The City argues that to prevail on its claim for public nuisance, it must establish that: (1) harm occurred to the public; (2) defendants were a substantial factor in causing the harm; and (3) abatement of the cause of the harm was reasonable. Although numerous Wisconsin cases discuss public nuisance, no single case explicitly lists the elements that must be proven

___

[3] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

when one is alleged to have created a public nuisance, rather than maintained a public nuisance. Based on our review of these cases, however, we believe that the City is essentially correct.

¶ 10. In *Brown v. Milwaukee Terminal Ry. Co.*, 199 Wis. 575, 224 N.W. 748, *on reargument,* 199 Wis. 588, 227 N.W. 385 (1929), the court held that the basis for liability in a public nuisance case "is the damage done by or danger inherent in the *creation or maintenance* of that which constitutes a nuisance." *Id.* at 589 (emphasis supplied). The court added, "[i]n order to establish liability for a nuisance it must be found that the nuisance was the cause of plaintiff's injuries. The damage that may be recovered in actions based upon nuisance must always be the natural and proximate consequence of the danger created by the nuisance." *Id.* at 591.

¶ 11. Seventy-three years later, in *Physicians Plus*, our supreme court discussed what must be established to prove defendants *maintained* a public nuisance. *See id.*, 254 Wis. 2d 77, ¶¶ 2, 19–32. Relying on *Brown,* the court held:

> [L]iability for maintaining a public nuisance is based on the following elements, plus public policy. First, the existence of the public nuisance itself; second, actual or constructive notice of the public nuisance; and third, that the failure to abate the public nuisance is a cause of the plaintiff's injuries .... We also look to public policy considerations because we conclude that similar to liability for negligence, liability for maintaining a public nuisance can be limited on public policy grounds.

*Physicians Plus*, 254 Wis. 2d 77, ¶ 2. The court distinguished cases involving the maintenance of a public nuisance from those involving the creation of a public nuisance. *Id.*, ¶ 24 n.19. It noted that cases involving

the defendant's creation of the public nuisance do not require proof that the defendant had actual or constructive notice of the hazardous condition that later developed. *Id.*

¶ 12. Although *Physicians Plus* dealt with the maintenance of a public nuisance, we conclude that the same legal standards, modified to accommodate the difference between creating and maintaining a public nuisance, should apply. We hold that to establish a claim of creating a public nuisance, a plaintiff must prove that the defendant's conduct was a substantial cause of the existence of a public nuisance and that the nuisance was a substantial factor in causing injury to the public, which injury is the subject of the action. Finally, public policy considerations must also be considered because, similar to liability for negligence, liability for creating a public nuisance can be limited on public policy grounds. *See Physicians Plus*, 254 Wis. 2d 77, ¶ 2.

¶ 13. For purposes of summary judgment, defendants assume that a public nuisance exists and that the City suffered damages. Defendants assert, however, that "[t]he real question is whether the Circuit Court properly applied Wisconsin causation law to the evidence before it in dismissing the City's claims." They also argue that public policy concerns preclude liability.

## 1. Causation

¶ 14. With respect to causation, defendants argue that the City must show that defendants' conduct or products were "substantial factors" in causing the injury. To do so, defendants contend, "the City must prove, at a minimum, that NL Industries' pigment or lead paint or Mautz's lead paint is present on windows

in Target Area properties and that their conduct some-how caused the paint to become a hazard to children." (Emphasis deleted.)

¶ 15. The City has admitted that, because tech-nology does not make it possible to do so, the City cannot identify the specific lead pigment or paint con-tained in the houses being abated. The City contends such identification is unnecessary where, as here, it is a community-wide health threat which is the alleged public nuisance, and the City can prove community-wide marketing and sales by defendants in the City of Milwaukee at times relevant to the creation of the nuisance. The City asserts that it

> needed to present evidence that could lead a reasonable fact-finder to conclude that Respondents were a sub-stantial factor in contributing to the community-wide, lead-based public nuisance in Milwaukee . . . . The fact that the City undertook a house-by-house approach to abating the lead hazard is relevant to the reasonable-ness of abatement and to the amount of damages; it is not relevant to the City's ability to prove Respondents were a substantial factor in contributing to the lead public nuisance in the Milwaukee community.

(Emphasis deleted.) The City maintains that this posi-tion is consistent with the fact that public nuisance is focused primarily on harm to the community or the general public, as opposed to individuals who may have suffered specific personal injury or specific property damage. We agree. Were it otherwise, the concept of *public* nuisance would have no distinction from the theories underlying class action litigation, which serves to provide individual remedies for similar harms to large numbers of identifiable individuals. Here, the allegation at its essence is that defendants sold and promoted a dangerous product to a community and that

product caused a serious public health problem in that community. The City, rather than only the sick children, has suffered and sustained an injury. This injury, unlike injury suffered by individuals, is community-wide and affects even those whose health is not compromised by lead-paint poisoning. The City is also the entity most reasonably able to remedy this community-wide injury to public health.

¶ 16. "Causation is a fact; the existence of causation frequently is an inference to be drawn from the circumstances by the trier of fact." *Merco Distrib. Corp. v. Commercial Police Alarm Co., Inc.*, 84 Wis. 2d 455, 459, 267 N.W.2d 652 (1978) (citation omitted). As long as the City can establish genuine issues of material fact with respect to these alleged causes, summary judgment is precluded. *See M & I First Nat'l Bank*, 195 Wis. 2d at 497 ("[S]ummary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.").

¶ 17. We agree with the City that there are genuine issues of material fact with respect to the cause of childhood lead poisoning in Milwaukee. The City's expert, Dr. Bruce P. Lanphear, M.D., opined that the source of lead paint exposure for most children is in their home. Dr. Lanphear stated that even in homes where lead-based paint has been painted over with non-lead paint, the underlying lead can still become accessible to children. If the painted surfaces deteriorate, or are exposed to weathering or to friction, then lead flakes, dust or particulate can be ingested or inhaled. According to Dr. Lanphear, friction on windows predictably results in dispersal. The City contends that

this evidence supports the conclusion that the very existence of lead paint in a home is a public nuisance, and this remains true regardless of how well a property is maintained.

¶ 18. The City believes its facts establish a basis upon which a jury could conclude that defendants caused this nuisance by selling lead paint in Milwaukee and promoting its use there. The City's evidence and expert testimony indicate that defendants sold lead for use in paint, or lead paint, in Milwaukee. Both Mautz and NL Industries acknowledge this. Mautz denies that it sold lead paint for interior use and attempts to distinguish its sales of lead paint for exterior residential use as negligible, asserting that such sales, as a matter of law, cannot be a substantial cause of the alleged public nuisance. However, there does not appear to be agreement on what would be a "negligible" amount of sales in the context of paint sales over many years. Nor does there appear to be agreement on how "negligible" is to be measured during the relevant time. The determination of such questions is for a jury rather than this court. Based on our review of the current record, we are persuaded that there are disputed material facts concerning the extent of both defendants' sales in Milwaukee and whether those sales were a substantial cause of the alleged nuisance. We conclude, therefore, that this is an issue for the jury.

¶ 19. We likewise conclude that the extent and effect of promotion of lead paint sales by both defendants is an issue of material fact for the jury. The record discloses that NL Industries promoted its lead paint, Dutch Boy, to the general public through substantial advertising. There is evidence that Mautz promoted the use of its lead paint, including through its sales force. For example, as the federal government's 1973 ban on

325

the sale of lead-based paint neared, Mautz Executive Vice-President Bernhard Mautz issued a memo to the Mautz sales force stating:

> I want you to begin the continual program with each of your dealers of making sure their stock is rotated with the older material being sold first.
>
> This is a very important project due to the lead regulations. At the present time we are cleaning up our material of heavy metals and putting this into our stock items.
>
> When the lead regulation is finally put into effect those dealers who have old material will not be able to sell it. The only alternative they will have is to dump it.
>
> Let's do our dealers a favor now by rotating their new stock.

Evidence that Mautz and NL Industries each promoted the use of lead paint directly to the public and through sales staffs creates a genuine issue of material fact for the jury on the question of whether defendants participated in the creation of a public nuisance of childhood lead poisoning in the City of Milwaukee.

### 2. Public Policy

¶ 20. Defendants argue that public policy considerations preclude liability. We decline to address defendants' public policy concerns at this stage of the proceedings. Those concerns are more appropriately addressed after trial, based on a complete factual record.

¶ 21. In *Alvarado v. Sersch*, 2003 WI 55, 262 Wis. 2d 74, 662 N.W.2d 350, a negligence case, the supreme court addressed the issue of when it is appropriate to

limit liability at the summary judgment stage, before all the facts have been presented to a jury for determination. *Id.*, ¶¶ 11–12. *Alvarado* involved the claim of a housecleaner who lit what she thought was a candle but was actually a firework. The firework exploded in her hand, causing severe injuries. *Id.*, ¶¶ 3–5. She sued the owner of the apartment building, its manager and a painting contractor (and their insurers), alleging negligence by each. *Id.*, ¶ 6. The trial court granted summary judgment for two defendants on grounds that they had no duty of care to protect the housecleaner from the harm. *Id.*, ¶ 7. The court of appeals affirmed, but on public policy grounds, concluding that public policy barred any imposition of liability. *Id.*, ¶ 8. The supreme court reversed, concluding that neither the trial court nor the court of appeals should have granted summary judgment before a jury determination of the facts. *Id.*, ¶ 20. Only then would a public policy analysis be appropriate. *See id.* The court explained, "[i]t is desirable to have a full trial to precede the court's determination because the issues in this case are complex and the factual connections attenuated." *Id.*, ¶ 21.

¶ 22. Although the case before this court involves the creation of a public nuisance rather than negligence, we conclude that the supreme court's reasoning applies with equal force here. At trial, the jury will have the opportunity to determine whether a public nuisance exists, whether defendants' conduct in promoting the use of lead paint and their sales of lead pigment and paint in the Milwaukee area were substantial factors causing the nuisance, and whether the public nuisance, if one is found, was a cause of the damage sustained by the City. Findings as to the existence of a public nuisance, its cause, and the resulting damages will be

material and helpful in evaluating the public policy considerations raised in this case. *See id.*, ¶ 25.

## B. Conspiracy Claim

¶ 23. The trial court dismissed the City's conspiracy claim on the ground that, having dismissed the public nuisance claim, there was no underlying tort upon which a conspiracy claim could be based. Assuming for purposes of this opinion that this analysis is accurate, it does not now serve as a basis to affirm the dismissal because we have concluded that the public nuisance claim should be tried.

¶ 24. Defendants offer several reasons to affirm the dismissal of the conspiracy claim. Specifically, they argue that the City's allegations of conspiratorial conduct are unsupported by any evidence of concerted action, that the City cannot show it was injured by the alleged conspiracy, and that defendants' alleged legislative activities are constitutionally protected, and thus cannot support the conspiracy claim. We reject these arguments because we conclude that testimony and discovery materials in the record establish that there are genuine issues of material fact as to the elements of a civil conspiracy, the object of which was to knowingly promote and sell a potentially hazardous product.

¶ 25. A civil conspiracy in Wisconsin is " 'a combination of two or more persons by some concerted action to accomplish some unlawful purpose or to accomplish by unlawful means some purpose not in itself unlawful.' " *Onderdonk v. Lamb*, 79 Wis. 2d 241, 246, 255 N.W.2d 507 (1977) (quoted source omitted). "To state a cause of action for civil conspiracy, the complaint must

allege: (1) The formation and operation of the conspiracy; (2) the wrongful act or acts done pursuant thereto; and (3) the damage resulting from such act or acts." *Id.* at 247.

¶ 26. The City has produced evidence that both defendants were active in trade associations that promoted the use of lead in paint to be sold to the public. There is also evidence that defendants continued to promote the use of lead paint despite knowledge of the risk to health brought about by its use in homes. For example, Mautz Executive Vice-President Bernhard Mautz, in a letter written in September 1972, tells "Friends" the following:

> As many of you are aware, the lead laws are still very much up in the air. Nobody really knows exactly what is happening and what the future of these laws will be. Right now the National Paint and Coatings Association is trying to stop the present legislation, but frankly, this does not look as if it is going to come through.
>
> At the present time the law stands that on December 31 no paint containing 0.5% lead is to be sold for home use. Supposedly, it can be sold for commercial use or anything besides toys, interior and exterior surfaces of homes, or anything around the home.

The letter goes on to identify batches of Mautz paint that can, and cannot, be sold in 1973 (the year lead paint regulations took effect), depending on the amount of lead in each type of paint. Finally, the letter notes that if anyone wants to buy the soon-to-be illegal lead paint, "we will be glad to make a special offer of 75¢ a gallon and 25¢ a quart off the regular price."

¶ 27. The existence of this letter, as well as documentation of NL Industries' involvement in lead paint promotion and opposition to regulatory legislation, lead

us to conclude there are genuine issues of material fact concerning each defendant's involvement in an alleged conspiracy to promote and accomplish the sale of lead-based paint, knowing of its potentially hazardous properties. These disputed issues of material fact preclude summary judgment.

## C. Restitution Claim

■■

¶ 28. The City contends that it should be allowed to recover restitution from defendants pursuant to the RESTATEMENT OF RESTITUTION § 115 (1937) and as recovery for unjust enrichment. Defendants argue the City has no evidence that the disputed sales conferred a benefit upon them. They also argue that the City's expenditure of funds has benefited the private property owners of the buildings being abated, not the public as a whole. Further, defendants claim that the City is not entitled to restitution for any abatement funded by federal and state funds. Details of the costs of the abatement program and the benefits conferred on the City have not been fully developed for this court's review. Also, the impact of the well-established collateral source rule on the facts here remains to be developed. *See Koffman v. Leichtfuss*, 2001 WI 111, ¶ 29, 246 Wis. 2d 31, 630 N.W.2d 201 ("Under the collateral source rule a plaintiff's recovery cannot be reduced by payments or benefits from other sources."). Because there are disputed facts that require resolution, summary judgment on this issue is precluded.

## CONCLUSION

¶ 29. For the foregoing reasons, we reverse the trial court's judgment and order and remand for trial on

the claims of public nuisance, conspiracy and restitution.

*By the Court.*—Judgment and order reversed and cause remanded.