**CITY OF ST. LOUIS, Appellant,**

v.

**BENJAMIN MOORE & COMPANY, et al., Respondents.**

No. SC 88230.

Supreme Court of Missouri, En Banc.

June 12, 2007.

---

Michael A. Garvin, Richard E. Banks, Patricia A. Hageman, Steve J. Kovac, Office of St. Louis City Counselor, St. Louis, MO, Ronald Scott, Patricia G. Chapman, Bracewell & Giuliani, LLP, Houston, TX, for Appellant.

Harvey M. Tettlebaum, Jefferson City, MO, Paul Michael Pohl, Charles H. Moellenberg, Jr., Jones Day, James R. Miller, Michael J. Sweeney, Pittsburg, PA, Mark G. Arnold, Thomas M. Dee, Shirley A. Padmore, Alan C. Kohn, Robert F. Murray, J. William Newbold, Daniel C. Cox, Thompson Coburn, LLP, Daniel J. Carpenter, Arindam Kar, Kenneth J. Mallin, Christopher J. Schmidt, Bryan Cave LLP, Jerome C. Simon, Peter Gullborg, St Louis, MO, Michael T. Nilan, Paula D. Osborn, Minneapolis, MN, Donald E. Scott, Bartlit, Beck, Herman, Palenchar & Scott, LLP, Timothy S. Hardy, Denver, CO, Elizabeth L. Thompson, Paul J. Skiermont, Carol A. Hogan, Chicago, IL, Dale A. Normington, The Sherwin–Williams Company, Cleveland, OH, for Respondents.

Deirdre C. Gallagher, St. Louis, MO, Eric G. Lasker, Spriggs & Hollingsworth, Washington, D.C., National Paints & Coatings Association, for Amicus Curiae.

Jordan B. Cherrick, Kirsten M. Ahmad, St. Louis, MO, James M. Beck, Dechert LLP, Philadelphia, PA, Hugh F. Young, Jr., Reston, VA, Product Liability Advisory Council, Inc., for Amicus Curiae.

Erwin O. Switzer, III, St. Louis, MO, Richard O. Faulk, Houston, TX, American Chemistry Council, for Amicus Curiae.

James B. Deutsch, Thomas W. Rynard, Jane A. Smith, Jefferson City, MO, Missouri Chamber Legal Foundation, for Amicus Curiae.

Robin S. Conrad, Amar D. Sarwal, National Chamber Litigation Center, Inc., Sherman Joyce, American Tort Reform Association, Robert T. Adams, Victor E. Schwartz, Philip S. Goldberg, Shook Hardy Bacon, L.L.P., Washington, D.C., Chamber of Commerce of the United States of America and American Tort Reform Association, for Amicus Curiae.

Todd S. Hageman, Simon Passanante, P.C., St. Louis, MO, Alliance for Healthy Homes, the St. Louis Lead Prevention Coalition, and the Children's Health Advocacy Project, for Amicus Curiae.

**PER CURIAM.**[1]

## INTRODUCTION

The city of St. Louis has a program to assess, abate and remediate lead paint be-

---

1. The Court of Appeals, Eastern District, transferred this case to this Court by an opinion authored by the Honorable Glenn A. Norton. *Mo. Const. article V, section 10.* Parts of that opinion are incorporated without further attribution.

cause it can be harmful when ingested by children. The city filed this public nuisance claim against companies that put lead paint into the stream of commerce seeking to recover its costs for the program. The city could not connect any specific defendant to any specific abatement project. Correctly relying on *Zafft v. Eli Lilly & Co.*, 676 S.W.2d 241 (Mo. banc 1984), the trial court concluded that the evidence was not sufficient to prove causation and entered judgment for the defendants. That judgment is affirmed.

## FACTS

The city alleges in its complaint that before 1978 the defendants "produced, manufactured, processed, distributed, and marketed" lead paint and pigment. It notes that such paint was widely used in housing, including in the city, and contends that the defendants knew it was highly toxic and posed a real and serious health threat, particularly for children. The city concludes that the "presence of lead paint in the [c]ity's housing built before February 27, 1978,[2] areas accessible to the public, unreasonably interferes with the public's health, safety, welfare, and comfort." The city then declares the presence of lead paint to be a temporary nuisance and seeks damages for assessing, abating, and remediating the nuisance.

During discovery, the city identified the private residences where it had incurred costs abating or remediating lead paint. It admitted, however, that it could not identify the manufacturer of any lead paint that was allegedly present at or abated from the properties at issue.

The defendants sought summary judgment, arguing that product identification was necessary to hold them liable under this or any tort theory, citing to *Zafft v. Eli Lilly & Co.* The city argued that product identification was not a requirement for this public nuisance claim brought by a governmental entity and that it only needed to show that the defendants substantially contributed to the lead paint problem in the city. The trial court characterized the evidence that the city claimed it would use to make that showing as "market-share evidence."

While the court believed that such evidence may be relevant, it concluded that, under *Zafft*, relying solely on that type of evidence in the absence of any product identification was not sufficient to prove causation. The court granted the defendants' motion for summary judgment, and the city appeals.

## DISCUSSION

### Standard of review

■ The propriety of summary judgment is a question of law, and appellate review is de novo. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993).

### Actual causation and legal causation

■ In all tort cases, the plaintiff must prove that each defendant's conduct was an actual cause, also known as cause-in-fact, of the plaintiff's injury:

Any attempt to find liability absent actual causation is an attempt to connect the defendant with an injury or event that the defendant had nothing to do with. Mere logic and common sense dictates that there be some causal relationship between the defendant's conduct and the

2. The federal government banned lead paint on February 27, 1978. *42 FR 44199, September 1, 1977; codified at 16 CFR part 1303.*

injury or event for which damages are sought.

*Callahan v. Cardinal Glennon Hospital*, 863 S.W.2d 852, 862 (Mo. banc 1993). Once actual causation has been established, the issue becomes one of legal cause—also known as proximate cause—that is, whether the defendant should be held liable because the harm is the reasonable and probable consequence of the defendant's conduct. *Id.* at 865.

In most cases, the plaintiff must establish actual causation by showing that the alleged harm would not have occurred "but for" the defendant's conduct. *Id.* at 862. The only exception is for cases involving two independent torts, either of which is sufficient in itself to cause the injury.[3] *Id.*

The city argues that the *Restatement (Second) of Torts* sets forth the proper standard for causation in a public nuisance case:

> One is subject to liability for a nuisance caused by an activity, not only when he carries on the activity but also when he participates to a substantial extent in carrying it on.

*Restatement (Second) of Torts* section 834. To the extent the city's argument is that the Restatement requires something less than proof of actual causation or should replace actual causation in a public nuisance case, it is incorrect. The comments accompanying section 834 reveal that "substantial participation" refers to legal cause and is not meant to replace the requirements of actual causation:

When a person is only one of several persons participating in carrying on an activity, his participation must be substantial before he can be held liable for the harm resulting from it. This is true because to be a legal cause of harm a person's conduct must be a substantial factor in bringing it about. (See [sections] 431–433, and [section] 876).

*Restatement (Second) of Torts* section 834, comment d; see also sections 431 and 432 (providing that conduct is a legal cause if it is a substantial factor in bringing about the harm, but it cannot be a substantial factor unless it first meets the test for actual causation). The Restatement does not abandon the requirement of proving actual causation in a public nuisance claim.

Missouri public nuisance cases are in accord and require the plaintiff to show a causal link between the defendant and the alleged nuisance. *City of St. Louis v. Varahi, Inc.*, 39 S.W.3d 531, 535–38 (Mo. App.2001) (city failed to prove that hotel's hourly rental policy, reputation and few incidents of arrest caused public nuisance of prostitution on street outside hotel); *see also State ex rel. Weatherby v. Dick & Brothers Quincy Brewing Co.*, 270 Mo. 100, 192 S.W. 1022, 1024–25 (1917) (state failed to prove that brewery's beer sales to dry county caused public nuisance of drinking and causing a disturbance); *State ex rel. Chicago, B. & Q. Railway Co. v. Woolfolk*, 269 Mo. 389, 190 S.W. 877, 879 (1916) (state failed to prove that railroad's delivery of liquor to dry county created public nuisance of drinking and causing disturbance).

**3.** In *Callahan* this Court used the example of two fires set on either side of a mountain that converge to destroy a cabin on top of the mountain. *Callahan* at 861. In those types of cases, it is obvious that each tort is an actual cause—in the "two fires" example, both fires obviously are causes-in-fact of the cabin's destruction—and the analysis moves directly to whether each tort was a substantial factor in causing the injury and thus can be considered a legal cause. *See id.* (discussing approaches to causation under the *Restatement (Second) of Torts* and under Prosser and Keeton on Torts).

■ The city's argument also seems to be that actual causation can be proven by showing that the defendant substantially contributed to the public health hazard created by lead paint via evidence of "community wide marketing and sales of lead paint." The defendants correctly contend that here, as in *Zafft*, where a plaintiff claims injury from a product, actual causation can be established only by identifying the defendant who made or sold that product.

### Product identification

*Zafft* was one of a number of similar lawsuits across the country stemming from claims that diethylstilbestrol (DES) taken during pregnancy caused cancer in female offspring. The plaintiffs in *Zafft* sued various manufacturers and distributors of DES, claiming that it was defective and seeking to hold the defendants responsible on theories of strict liability for failing to adequately warn about or test the drug. The plaintiffs claimed that the defendants represented all the known makers, sellers or distributors of DES in Missouri at the relevant time. The plaintiffs, however, were unable to identify which defendant made or sold the particular product their mothers had ingested. The drug had been marketed generically by as many as 300 different companies, and—through no fault of the plaintiffs—it was impossible to match a specific dosage with an individual manufacturer. The plaintiffs contended that justice required that they be able to pursue some type of alternative theory of liability with a more relaxed standard of causation or none at all. *Zafft* at 243–44.

Before addressing the plaintiffs' proposed theories, this Court noted that "under strict liability, as with any other tort theory, plaintiff must establish some causal relationship between the defendant and the injury-producing agent." *Id.* The

Court then rejected each proposed theory, including market-share liability. *Id.* at 244–46.

Under a market-share approach to liability, the plaintiff must join enough defendants to constitute a substantial share of the market and then the burden shifts to each defendant to exonerate itself or join the responsible parties not named by plaintiffs. This Court concluded that market-share liability is "unfair, unworkable, and contrary to Missouri law, as well as unsound public policy." *Id.* at 246. Among other problems, market-share liability "continues the risk that the actual wrongdoer is not among the named defendants, and exposes those joined to liability greater than their responsibility." *Id.* The Court recognized that the plaintiffs were innocent and claimed serious injuries, but "simply to state, as have courts ruling in favor of plaintiffs, that as between an innocent plaintiff and negligent defendants, the latter should bear the cost of the injury and that defendants can better absorb this cost, ignores strong countervailing considerations." *Id.*

> This Court concludes that the theories advanced by plaintiffs do not persuade the Court to abandon the Missouri tort law which requires that they establish a causal relationship between the defendants and the injury-producing agent as a precondition to maintenance of their causes of action. Strict liability in tort continues to provide a remedy to those plaintiffs who satisfy the identification requirement.

*Zafft* at 247.

■ Under *Zafft*, where the plaintiff seeks to hold the defendants liable on the basis that their products caused harm to the plaintiff, the identification requirement must be satisfied. Without product identification, the city can do no more than show that the defendants' lead paint may have

been present in the properties where the city claims to have incurred abatement costs. That risks exposing these defendants to liability greater than their responsibility and may allow the actual wrongdoer to escape liability entirely.

Even assuming that the city could prove—via marketing evidence or something else short of product identification—that a particular defendant held a certain share of the lead paint market in the city at the relevant time or even if it could prove that because of that defendant's market share there was a statistical probability that its paint was in a certain percentage of the properties at issue—that would not establish that the particular defendant actually caused the problem. Absent product identification evidence, the city simply cannot prove actual causation.

### Governmental public nuisance claims

The city contends, and the dissent would hold, that this public nuisance claim does not fit within the causation standards for other torts because the damage is not an individual injury, but a widespread health hazard that is "uniquely public—the monumental task of cleaning up [d]efendants' toxic products falls upon the City and its taxpayers." The trial court noted the attractiveness of the argument, but concluded that to adopt it would require a departure from or require a modification of *Zafft* and the standards for proving actual causation. This Court declines to approve such a departure in this case.

■■■■ Although the city characterizes its suit as one for an injury to the public health and suggests that it is for this injury that it is suing, this is not the case. The damages it seeks are in the nature of a private tort action for the costs the city allegedly incurred abating and remediating lead paint in certain, albeit numerous, properties. In this way, the city's claims

are like those of any plaintiff seeking particularized damages allegedly resulting from a public nuisance. The city, therefore, must meet the same causation standard as must other nuisance claimants and must show specific and particularized harm from the public nuisance of lead paint, different in kind from the harm to the rest of the community.

A public nuisance is any unreasonable interference with the rights common to all members of the community in general and encompasses the public health, safety, peace, morals or convenience.... The public nuisance also becomes a private tort when an individual shows a particular damage of a kind not shared with the rest of the public.... the private tort accrues to recompense damage particular to the person and not shared with the general public.

*State ex inf. Ashcroft v. Kansas City Firefighters Local No. 42*, 672 S.W.2d 99, 114–15, (Mo.App.1984) (suit by state, in the stead of municipality, to recompense for public injury caused by striking public employees did not seek damages distinctive from those suffered by general community and, thus, was not a private tort). The city's argument, accepted by the dissent, that its status as a governmental entity or the public nature of the injury should set this apart from other public nuisances or subject it to lesser causation standards does not apply to the damage suit it has actually brought.

### CONCLUSION

*Zafft's* product identification requirement applies with equal force to public nuisance cases brought by governmental entities for monetary damages accrued as an alleged result of the public nuisance. The trial court did not err in entering summary judgment against the city based

on its inability to provide any product identification evidence.

The judgment is affirmed.

STITH, PRICE, LIMBAUGH and RUSSELL, JJ., concur.

WOLFF, C.J., dissents in separate opinion filed.

TEITELMAN and WHITE, JJ., concur in opinion of WOLFF, C.J.

MICHAEL A. WOLFF, Chief Justice, dissenting.

The City of St. Louis can prove that multiple paint manufacturers sold lead-based paint in the city. The lead in the paint in buildings throughout the city is a poisonous nuisance that is a threat to public health and needs to be cleaned up. The city, however, cannot prove which lead-poisoned buildings have Benjamin Moore paints, which buildings have Sherwin–Williams paints, and so forth.

This is not a personal injury case. It is a nuisance case. The answer to the question in this case, as in many cases, depends on which legal theory is used. Because there are alleged to be multiple wrong-doers, the principal opinion applies this Court's legal theory in *Zafft v. Eli Lilly & Company*, 676 S.W.2d 241 (Mo. banc 1984), which rejected the idea of market share liability in a products liability personal injury case involving multiple alleged wrong-doers.

The *Zafft* decision rejects the market share liability that was adopted by the Supreme Court of California in *Sindell v. Abbott Laboratories*, 26 Cal.3d 588, 163 Cal.Rptr. 132, 607 P.2d 924 (1980). That case apportioned responsibility to individu-

al victims of the DES drug, which was taken by their mothers, according to each producer's market share of the drug during the relevant period. This is an extension of *Summers v. Tice*, 33 Cal.2d 80, 199 P.2d 1 (1948), a case in which two hunters negligently fired in the direction of a plaintiff: the plaintiff was unable to determine which of the two shots injured him, since he was only hit by one shot. The California court allowed recovery under an alternative liability theory that shifted the burden to both wrongdoers to prove that each was not responsible for the injury to the plaintiff. Since neither could prove that his shot did not do the injury, both shooters were jointly and severally liable. In *Sindell* this theory was expanded to allocate responsibility for an individual injury according to a manufacturer's market share, without regard to whether a particular manufacturer was in fact the source of the injury-causing doses of the drug.

Whether one accepts the *Sindell* legal theory, the whole *Summers–Sindell–Zafft* theory is irrelevant to the issue before the Court today because there is no injured person for whom it is necessary to determine which wrongdoer caused the particular personal injury. All of the companies that sold lead-based paint in the city of St. Louis contributed to the problem, which is not an individual injury—for which the wrongdoer must be identified—but rather is a poisonous hazard to which many may have contributed.

Let me suggest a more applicable analogy. Assume that a city draws drinking water from a stream into which ten defendants pour toxic sludge. The purpose of a nuisance lawsuit would be to require the polluters to clean up the sludge.[1] The

1. (1) A public nuisance is an unreasonable interference with a right common to the general public. (2) Circumstances that may sustain a holding that an interference with a public right is unreasonable include the following: (a) whether the conduct involves a significant interference with the public health, the public safety, the public peace, the public

point of the lawsuit would not be to provide a remedy to an individual who claims to have been injured by the toxic sludge. *See State ex rel. Wear v. Springfield Gas & Electric Co.*, 204 S.W. 942, 945 (Mo.App. 1918) ("if the facts...amount to a public nuisance, both as to the destruction of the fish and the pollution of the waters, so as to be injurious to the health and comfort of the public generally ...," then the prosecuting attorney can maintain a public nuisance action.) It is unimportant to identify an injury and link it to the harm that has been inflicted. It is important simply to identify the sources of the toxic sludge—indisputably a health hazard as in this case—and make the sources pay to clean it up.[2]

The lead-based paint that was applied to walls throughout the city of St. Louis is akin to the sludge in this hypothetical. The lead-based paint is a hazard to human health. When lead-based paint chips, flakes, or crumbles to dust, the lead can be ingested by young children, whose brains can be substantially injured, depending on the amount.[3] Treatment may reduce symptoms, and in extreme cases save the child's life, but treatment does not undo brain injury. Rogan, W., et al., *The Effect of Chelation Therapy with Succimer on Neuropsychological Development in Children Exposed to Lead*, 344 The New England Journal of Medicine, 1421–1426 (2001).

There is no question that the city has an obligation to its citizens to remove, or to cause the removal, of this public health hazard. The city of St. Louis has been more or less engaged in this vital effort, with intermittent bursts of attention, for many years. Norm Parish, *Mayor Harmon Crafts Plan to Reduce Lead Poisoning in Homes*, St. Louis Post–Dispatch, May 20, 1999; Marianna Riley, *St. Louis Still Can't Reduce Lead Poisoning in Children: Critics Say Lack of Coordinated Effort by Agencies has Hindered the City's Lead Abatement Program*, St. Louis Post–Dispatch, Aug. 21, 2003.

In many cities, including St. Louis, the issue is an economic one. The remediation of lead-based paint is expensive. It is an expense imposed upon older cities though it is a problem that these cities did not create. But no city can afford to continue having the brains of many of its children permanently dulled by lead poisoning.

comfort or the public convenience, or (b) whether the conduct is proscribed by a statute, ordinance or administrative regulation, or (c) whether the conduct is of a continuing nature or has produced a permanent or long-lasting effect, and, as the actor knows or has reason to know, has a significant effect upon the public right. *Restatement (Second) of Torts* sections 821B(1) and (2).

2. In the current era, nuisance prevention and remediation from pollution is accomplished through various federal and state statutes. *See, e.g.*, The Clean Water Act, 33 U.S.C.A. sections 1251 et seq. (1981) (amended in 1987), regulating the discharge of pollutants into the waters of the United States, and the prevention of and response to accidental releases and spills of oil and hazardous substances to waters of the United States, and the Missouri Clean Water Law, sections 644.006 et seq., and the corresponding rules established by the Missouri Department of Natural Resources. These statutes and rules have not replaced common law nuisance actions. *See State ex rel. Dresser Industries, Inc. v. Ruddy*, 592 S.W.2d 789, 792 (Mo. banc 1980), which holds that the Clean Water Law did not preempt public nuisance claims.

3. Adults, of the urban-pioneering rehabbing variety, also suffer lead poisoning by inhalation when burning, sanding, or scraping lead-based paint from the walls of old buildings that they are rehabbing. Adult brains may not be as profoundly affected by exposure to lead, but they may show signs of neurological injury.

In the same way that it is appropriate to make polluters contribute to the cost of the cleanup of their sludge, it seems appropriate to make the manufacturers of lead-based paint help pay for the cost of remediating the poison they have helped distribute throughout the city.

If this Court treats public nuisance cases as the principal opinion does here, "the concept of *public* nuisance would have no distinction from the theories underlying class action litigation, which serves to provide individual remedies for similar harms to large numbers of identifiable individuals." *City of Milwaukee v. NL Industries, Inc.*, 278 Wis.2d 313, 691 N.W.2d 888, 893 (App.2004). This is because an entire city—not just one sick child—has suffered and sustained an injury. *Id.* This injury "is community-wide and affects even those whose health is not compromised by lead-paint poisoning," and "the [c]ity is also the entity most reasonably able to remedy this community-wide injury to public health." *Id.*

This public nuisance case has *nothing* to do with identifying a particular paint and linking it to a particular injured victim. It has everything to do with identifying the sources of a poison and making those sources pay their fair share of the cost of the cleanup of a direct hazard to the public health.[4]

I respectfully dissent.

---

4. The city also appeals a 2004 trial court order in which the trial court denied defendants' previous motion for summary judgment based on the statute of limitations. The defendants argued that the city's claim was for permanent nuisance which has a five-year statute of limitations. The trial court disagreed, finding that the city's claim was for temporary nuisance, which has a ten-year statute of limitations. The city only appeals the trial court's determination that because the city is suing for a temporary nuisance, it is not allowed to recover future damages. In this appeal, defendants have suggested that this Court find, as an alternative ground, that the city's actual claim is for permanent nuisance and, consequently, is barred by the five-year statute of limitations.

Whether a nuisance is temporary or permanent is a question of law for the court, *not* a question of fact for the jury. *Campbell v. Anderson*, 866 S.W.2d 139, 143 (Mo.App. 1993). "Whether a particular nuisance is 'permanent' or 'temporary, continuing or abatable' is one of the most baffling areas of the law," Judge Simeone observed in *Spain v. City of Cape Girardeau*, 484 S.W.2d 498, 503 (Mo.App.1972). A nuisance is temporary if it is reasonably and practically abatable. *Frank v. Environmental Sanitation Management, Inc.*, 687 S.W.2d 876, 883 (Mo. banc 1985). This lawsuit seeks compensation for the costs of abating, or removing, lead-based paint in city residences. The trial judge correctly determined that the lead-based paint is abatable and not subject to the five-year statute of limitations. That said, however, the statute of limitations defense—even under the longer period—may still be open to defendants as a factual issue if this case were remanded.